Silver Bluff Estates, Inc. v. Commissioner.
Silver Bluff Estates, Inc. v. Commissioner
Docket No. 12303.
United States Tax Court
1947 Tax Ct. Memo LEXIS 170; 6 T.C.M. (CCH) 673; T.C.M. (RIA) 47165; June 24, 1947
*170 Harry G. Taylor, Esq., 1612 Congress Bldg., Miami, Fla., for the petitioner. Edward L. Potter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined deficiencies in petitioner's income tax and declared value excess-profits tax for the fiscal year ended May 31, 1945, in the respective amounts of $550.48 and $290.49. The question is whether certain income is attributable to petitioner for tax purposes. The returns were filed with the collector of internal revenue for the district of Florida. Findings of Fact Petitioner, a Florida corporation, was formed pursuant to an agreement between H. T. Broders and Horine Holding Company dated June 2, 1934. The agreement recites that Horine, as an unsatisfied creditor, had acquired interests in real estate known as Silver Bluff Estates, Inc., in Miami. Horine desired to liquidate its interests in this real estate and desired the services of Broders in this connection. Horine agreed to have formed a Florida corporation "for the purpose of acquiring title, legal and/or equitable, to all properties above referred to." Horine further bound itself "to cause the necessary steps *171 to be taken to have the legal title to all of the property referred to herein transferred to H. T. Broders and Morgan Van Valkenburgh as successor trustees for the use and benefit of the corporation to be formed." The agreement contemplated that Broders would be employed by the new corporation to "rehabilitate, sell or otherwise dispose of any of the assets of the new corporation." All moneys realized from the liquidation were to be distributed to Broders and Horine in proportions next described after the payment of operating expenses "including funds necessary to the reimbursement to the party of the first part [Horine] for all monies advanced for the purpose of organizing the corporation referred to * * *". After the payment of such expenses any amounts remaining in excess of $1,000 were to be paid 65 per cent to Horine, and 35 per cent to Broders. This ratio of distribution was to continue until Horine had received a total of $21,000, after which time Broders was to receive 50 per cent of the distributions. It was agreed that 100 shares of no par common stock would be authorized and distributed, 49 shares to Horine, 1 share to Van Valkenburgh and 10 shares to Broders. The *172 remaining 40 shares were to be placed in escrow to be subsequently delivered to Broders as next described. When Horine received in distributions from the proposed company the respective aggregate amounts of $5,250, $10,500, $15,750 and $21,000, Broders was to receive, respectively, an additional 10 shares from the escrow holder. In this manner, after Horine had received $21,000, Broders would have 50 shares of stock. The stock, while in escrow, could not be voted. The agreement provided that the proposed company would have three directors, Broders, Van Valkenburg and a person selected by Horine. It was agreed that the directors would elect Broders president and manager, Van Valkenburg vice-president and treasurer, and the secretary to be named by Horine, and that these oficers would be reelected annually "so long as the corporation may exist, and until said assets shall have been fully liquidated and distributed, as herein provided." Petitioner was formed pursuant to the above described agreement and its by-laws included a copy of such agreement. The by-laws, in this connection, stated: "It being the intention of the incorporators of Silver Bluffs Estates, Inc., that the future *173 management and affairs of this corporation be conducted in accordance with the intent of that certain Agreement * * * dated June 2 1934, and the said Agreement is herein set out and made a part of these by-laws." The by-laws further provided that dividends "shall be declared in accordance with the provisions of the Agreement dated June 2, 1934, * * *." During its existence petitioner was operated substantially in accordance with the terms of the agreement. Shares of stock were issued as proposed and without any capital contributions therefor by the stockholders. Horine advanced $500 to petitioner at the time of its organization, which amount was repaid to Horine by petitioner from receipts from the liquidation. The title to the property involved was vested in Broders and Van Valkenburgh as trustees. The deeds of conveyances in selling the realty being liquidated were executed by the trustees. Petitioner was not a party to these conveyances. The money received by the trustees, as liquidation of the property progressed, was deposited in petitioner's bank account and the expenses of rehabilitation, maintenance and liquidation were paid by petitioner from these funds. Any funds remaining *174 were from time to time distributed by petitioner to Horine and Broders as provided in the June 2 agreement. Prior to 1944 petitioner filed returns reporting as its income the gain derived from the liquidation of the properties. Thereafter, it filed returns but did not report as its income any such gains. On May 31, 1946, petitioner was dissolved and Broders and Van Valkenburgh, under a supplemental agreement, are carrying on the functions previously performed by petitioner. Opinion The question is whether income realized from the liquidation process during the taxable year is taxable to petitioner. Respondent argues it is because petitioner as a corporate and taxable entity can not be disregarded and that therefore the income in question must be attributed to it for tax purposes. Petitioner contends that it was just an agent or conduit in respect of the income and is not, therefore, taxable. We think petitioner is not taxable. Petitioner was formed pursuant to and subject to the terms of the June 2, 1934, agreement. This agreement provided that the petitioner would distribute the proceeds of the liquidation in a certain manner. This provision ante-dated petitioner's creation *175 and petitioner was created subject to this requirement and for the purpose of satisfying it. There was no right, power or discretion in petitioner with respect to the disposition of the income in question. Petitioner did not, after its creation, obligate itself to distribute the income a certain way. Petitioner was powerless to have assumed such obligation. Petitioner's lack of command over the income is not the result of ignoring petitioner as a corporate or taxable entity but is a result of the agreement which prescribed and controlled the disposition of the income involved. In this respect the instant case differs from , wherein the Court said: "There was no actual contract of agency, nor the usual incidents of an agency relationship." Since, in our opinion, command over the income is the essential matter here we do not consider it necessary to determine where ownership of the property being liquidated lay. Nor do we think petitioner's distribution of the income can in any way be confused with dividends. Even if called such, the distributions were not the result of petitioner's authority to declare them. Nor did *176 the directors or stockholders have power to alter the pattern or character of the distributions since these were governed by the basic agreement of June 2, 1934. Furthermore, the distributions did not correspond with stock ownership. The fact that prior to 1944 petitioner returned income from the liquidation as its own does not affect our conclusion. Convinced as we are that petitioner had no command over the income in question, we hold that petitioner is not liable for any tax on it. See . Decision will be entered for petitioner.